which is 19-3032, United States of America v. Cofano, Jordan. We'll give counsel a minute to come on up and get settled at the council table. And I understand we have Attorney Drake for the appellant who would like to preserve three minutes for rebuttal, is that right? Yes, please, your honor. Very good. Why don't we just give us a second for our Whenever you're ready, thank you. Thank you. Good morning. May it please the court and counsel. My name is Jamesa Drake and I'm here today representing Cofano, Jordan. I'd like to begin, if I may, by taking stock of recent case law developments. As this court knows, a considerable length of time passed between the briefing in this case and our argument today and for good reason. After Taylor was decided, this case and many like it were placed in what the Pastore decision referred to as the crime of violence queue. And well in that queue, this court decided, among other things, Pastore, which has- Well, it wasn't placed in any sort of queue in any formal way. It just happened to be calendared today and today happens to be the day that we got to it. So it has not, just so you know, it hasn't been delayed or anything. We haven't held it for that. I didn't mean to suggest as much. Just wanted to be sure that you weren't thinking that- There is and has been a queue and there are cases that have been decided in the interim seriatim overtime. The queue generally refers to cases we've already heard and that we forbear from deciding because we as a panel are waiting for another case to be decided. But in this case, your case, just so you know, was in the normal pipeline, has emerged from the pipeline at the time it always would have, regardless of whether Pastore had ever been a case that existed. Just so you know. Thank you. And I meant no implication other than to say, as Judge Lynch redirected, that in fact there have been important case law developments in the interim. Chief among them, as it relates to count two, is the Pastore decision. We made three arguments with respect to count two, and specifically whether the predicate offense of attempted murder qualified as a matter of law as a crime of violence. We argued that generic attempted murder does not qualify, and that attempted murder in violation of New York penal laws, section 125.25 sub 1, did not qualify, largely in reliance on the US Supreme Court's Taylor decision. Thirdly, we argued that the government never specified which division of New York's divisible second degree murder statute was the predicate here. Isn't there only one division that is susceptible to attempt? You can't attempt the recklessness, extreme recklessness homicide, because you can't attempt to be reckless. And by the same token, you can't attempt what is effectively a felony murder provision, because that, too, does not require any intent to kill. And therefore, since attempt requires an intent to complete the crime, if you go into a bank to rob it, even if you complete the robbery, it's hard to say you've attempted to commit felony murder because you didn't intend to kill anybody. Maybe somebody gets killed later and it becomes a murder. But that's not the, so I'm having trouble seeing how this could be anything other than a subdivision one case, because it's not a murder, it's an attempted murder. Yes. If I may, I did just want to say with regard to those first two arguments we made, we don't withdraw them, but do recognize the preclusive effect of pastore. Okay. So what you're saying is you're precluded here and you recognize that we're bound by the pastore case, but you want to preserve those, of course, because- Precisely. We could be wrong, or we could be right and the Supreme Court thinks we're wrong and they have the final say. Precisely. I adhere to the reasoning we advanced, but because of the law of the circuit doctrine, candidly don't have a good basis for coming before you today asking for anything otherwise. And we appreciate that. With respect to your- Thank you. And what, are you, is there something still left then? You said there were three arguments and two of them you recognize are precluded by pastore. What is the one that is not? The one that was not is the one that your Honor's question was addressed to, which is whether, having failed to specify which of the subdivisions of New York, second degree murder statute, are there any that could apply? Right. The very truncated factual record that we have, both as it relates to count one and count two, but of course now we're talking about count two, is that my client fired a round garbage truck at another vehicle, doing so in aid of racketeering. It is our position that that could qualify as depraved indifference murder. It could if somebody died, yeah. I think that's exactly right. It might be better suited in a way. It might be a harder case to prove intent to kill under the circumstances or to defeat a defense that there's a reasonable doubt that I was just trying to scare somebody and I did something that had an extremely high chance of doing worse and it did. But that still leaves the problem of this is, that isn't this case. This is an attempt case. Well, then I think it gives rise to another, frankly, very interesting problem, which is that the completed crime wouldn't qualify as a crime of violence, but the attempted crime would. Yeah, but that's okay, because the statute, this is not a case where people are sort of, judges or a sentencing commission or somebody is making up that attempts are covered. The statute says attempts are covered. So attempted murder is a separate thing that is specifically covered by Vicar, separate from murder. I understand your Honor's point, and if I can say it as diplomatically as possible, don't mean to tag on it too hard, because I think the more interesting arguments lay with respect to count one. Let me ask you about count one, because your time is running out, and I do have one question for you. Of course. I went through the transcript of the change of plea when your client pled guilty, and I'm specifically looking at pages 850 through 853 of the record. Whether it's count one, the assault charge, or count two, are you, is your position that your client did not understand? I mean, when I read this colloquy, he not only says what he did, he says he did it in furtherance of a racketeering activity. Specifically, for example, at 853, he says, and this goes to the attempted murder. The judge asks him, he says, both of these actions, your Honor, were crimes that I did in furtherance to protect myself from the rivals of the organization. And earlier, he says, in furtherance of racketeering activity, he explains in detail in his own words what he did. And the court says, okay, so let's focus on count two. When you shoot the bullet at the other car, you're saying you were shooting the bullet at the rivals of the nine trade gangsters' floods? Yes, your Honor. Earlier on, he talks about what he did, both factually and then satisfying the elements of doing something. If the modified categorical approach is applied, are you saying that this doesn't fall within the section of the divisional statute that involves a crime of violence? Yes, and if I could address my answer to count one, there was, to put it in layman's terms, there was a little bit of a hang-up at the plea about the in furtherance of racketeering element. That got ironed out, and that is not the focus of our argument on appeal. The focus instead is, so what exactly then did he do in furtherance of racketeering, and more specifically, is what he did a crime of violence? We learned for the first time from the government's brief that what he did was supposedly a violation of New York's second-degree menacing statute, and in particular subsection one, something that had never been pleaded, and as I suggest from this plea transcript, something that was not proved. Because in order to meet the elements of that offense, the government would have had to establish that my client displayed a weapon, and he very carefully did not admit to displaying a weapon, because had he done that, it would have subjected him to an additional two years minimum mandatory prison term. So our argument is, we advance four separate arguments with respect to count one, but as it relates to your Honor's question, even if, and let me also take a step back, even if it were to qualify under the categorical approach, second-degree menacing as a crime of violence, it is nevertheless a misdemeanor, so it can't qualify under 924C3 for use as a predicate here. Wait, no, 924C says the use of the weapon – this gets very complex, I'm sorry, but you know it does – says that the use of or possession of the weapon has to be in furtherance of a felony, but the felony that is charged is vicar, which is a felony. And then the question is, does this violate the federal statute? And the way you find that out is, is there a state crime that he committed, and the state crime – there's nothing that says the state crime has to be a felony. There's nothing in vicar that says this only applies to state felonies. It says if you do certain things in violation of state law. And then you have the further problem that unlike Count 2, where there's some mystery about what the underlying felony is, in Count 1, the plea agreement and the plea colloquy both note that Count 1 is incorporating by reference Count 3 of the underlying indictment, which does specify the particular offense that's charged, although not the subdivision, is that fair? Not the subdivision. But once again, you get to the problem of is there any subdivision that could possibly apply? And I guess all of this is leading up to, isn't your strongest point here the simplest one, which doesn't involve the categorical approach at all, but involves the question of once you get down to what the government says we're supposed to be looking at, which is was there a violation of this particular New York menacing statute that requires the display of a weapon, and he never allocutes that he displayed a weapon. Now, it's true that he's pleading guilty to something that incorporates the charge of a gunpoint robbery, and I suppose if it's a gunpoint robbery, then somebody pointed a gun, and I don't think it has to be him for him to be guilty of all of the convoluted federal crime that's there. But isn't that really the crux and the simplest thing, that he never actually allocated to the elements, all of the elements of the offense that if the government is right about a whole series of things that you contest, is what is charged? If I may. Oh, please. Cognizant of the time, of course, and I in no way mean to suggest that this court should go through the much more difficult, as your Honor points out, task of trying to decide what and what is not a crime of violence. If the problem here is, as we contend in our papers, ultimately an allocation problem, then the conviction is infirm and should simply be vacated on that ground. Can I ask you before you sit down, and I know we've held you up for a long time and you've reserved three minutes for rebuttal, but the standard of review here, in your view, what is it? Well, we have to concede that it's plain error review. It wasn't preserved, and as your Honors are probably aware, this began as an Anders process. Yeah, no, no, and I appreciate that. Okay, very good. Just to follow up on the standard of review point, there was no request to withdraw this plea. I take it I can assume that Mr. Jordan understands what the consequences of this appeal would be, that if he wins, he's back in the position where he is charged with yet more crimes, that if he goes to trial on them, he could wind up in a much worse place than he is now. He's in a pretty bad place now, of course, but there could be multiple murders that are charged here in the indictment. If convicted of those things, there could be life sentences and consecutive life sentences and all kinds of stuff that happens, and I'm just asking for your representation that he understands that. He does. Yes, we are in no way conceding that he could be charged and convicted and sentenced to multiple life sentences, but we have discussed in depth what it might mean to vacate one of the convictions. He has the exposure, obviously. He has the exposure. Yeah. That's good. We'll hear from you again. Thank you very much. Let's hear from the government. And before we actually get going, I have a preliminary question, and this may not appear in the record, and if there is no basis to provide an answer to that question, it's fine, but I'm very curious. There were three co-defendants here. My understanding of the record, all three of them had pretty much the same appellate waiver in their plea agreements. The government moved to enforce two of them, and the court granted those motions, and here the defense originally filed an Anders motion based on the appellate waiver, and my understanding is the government filed an opposition saying, no, there are some non-frivolous issues to be briefed, and didn't breathe a word about the appellate waiver. I'm a little confused when that happens in the same exact case. So if there is a basis to enlighten us, that's fine. If that requires piercing the veil of sort of what's going through the executive's mind, I certainly don't want to do that. So if there's an answer you can give, that'd be great. If not, that's fine too. May it please the court. My name is Jim Lightenberg. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal. So I'll start with your question, Judge Nardini. Unfortunately, I can't answer that question. I wasn't involved in the case at that point. So I don't know, but I can confirm that the government here is not seeking to enforce the appellate waiver. Well, yeah, it's too late at this point. You may wish, when you go back to your office, to have that discussion, and I certainly hope that it was done in some purposeful manner. I have to say I was awfully confused, but there we are, and why don't you proceed with the issues we do have. You are not the lawyer who tried this case? No, Your Honor. In fact, it looks like nobody who signed the brief is here. They have all since left the office. We're glad to have you here. Here I am. So let me start by addressing your question, Judge Lynch, which is the factual basis for the plea as to count one. And there is a more than adequate factual basis here. And let me just start with what the judge is allowed to consider. The judge is not limited to a plea allocution. The judge can consider any facts in the record. And, in fact, the plea, the factual basis has to be sufficient under Rule 11 before judgment is entered. So the court can consider the PSR, the pre-sentence report. The court can consider statements from the government in the sentencing submission. That's in addition to the plea agreement, the plea allocution, and the charging documents. Here we have many, many things that point to this being an adequate factual plea. That includes the plea agreement, which at A19 in the coverage provision specifically mentions brandishing. Now, this is the coverage provision. This is telling what the defendant is covered for. But critically here, the language in that provision describes it as a robbery and a brandishing in furtherance and says that it is as charged in count one. And so that is an admission that count one, which the defendant pled to, involved the brandishing of a weapon. You can also look at, as Judge Lynch pointed out, the underlying indictment here. Count three in the Tewitt Clause described it as a gunpoint robbery. Now, gunpoint implies that the gun is out, that it's brandished, that it's not in your pocket unbeknownst to anyone. But of course, that's a charge. And he can plead guilty to that charge, I take it, without admitting to that particular fact, right? Because all that's required in count three is that it be a robbery. That's true. But the defendant did admit in his plea allocution and in the plea agreement that the count he was pleading guilty to was based on that count. Yes. Also, the PSR. Can I just ask to distinguish between the two? I think I understand your argument based on the cross-reference to count three in the indictment because it appears in the plea agreement and it was discussed to some degree at the allocution. I guess I don't understand your argument regarding the PSR because I didn't understand this to be an argument on the part of the appellant that there's an absence of a factual basis. I thought the point was we don't know what he pled to. If he pled to that, there wouldn't be a factual basis. Aren't those two conceptually distinct arguments? They are. I understand the appellant to be making both arguments. And since Judge Lynch identified the factual sufficiency as he thought a stronger argument, I address that. But I think the argument is just as strong that subdivision one of 120.14, the second degree menacing statute, is the subdivision under just the Shepard documents that the defendant pled to under the modified categorical approach. And I think, again, Judge Lynch hit the nail on the head there. Clearly, we're applying 120.14. I think the appellant has conceded that point in the reply brief. And so the question is which subdivision? And only subdivision one involves a gun. Subdivisions two and three, subdivision two is about stalking. Subdivision three involves violating an order of protection. And there's just no basis to conclude that either of those apply. And this is how the modified categorical approach works. For instance, just this past year in United States v. Morris, the court, that's 61F4-311, the court was applying the modified categorical approach to decide whether the predicate was assault with a dangerous weapon or assault resulting in serious bodily injury. And the court reasoned, well, the Shepard documents mention a gun. They don't mention serious bodily injury. So, of course, we're in that portion of the statute. The other subdivisions of what you might call aggravated menacing, I don't know if that's what New York calls it in 120.14, the other aggravators are kind of domestic. And what he's saying, what he's acknowledged, admittedly, as Ms. Drake pointed out, in response to the question about was it in furtherance of the rappeteering enterprise, was that he was retaliating against enemies of the Nintre gang. Which doesn't seem to have anything to do with orders of protection. I don't think members of whatever the rival gang was have orders of protection. Gangsters don't usually come to court and get orders of protection against rival gangsters. It's not a stalking situation, as he pointed out. That's exactly right, Your Honor. So there's no basis to conclude that subdivision 2 or 3 applies. And there's every basis to conclude, even just on the Shepard documents, that it's subdivision 1. Again, because the plea agreement specifically mentions brandishing, which is exactly what subdivision 1 charges. The underlying indictment in the Tewitt Clause refers to a gunpoint robbery. The defendant himself admitted to committing assault with a dangerous weapon. And the superseding information itself charges assault with a dangerous weapon. None of the other subdivisions even require the use of a weapon. Can I ask you, the appellant has conceded that plain error applies here. Does that really make any difference at all in our review in this particular case? Would it wind up, would our analysis effectively be the same, in other words? Or is there some overlay of additional deference that makes a difference here? The government would win under any standard, because the record is clear, as we pointed out. I guess I understand that, but would there be a different analytical path that we would follow, arguably, under one or the other? Or are we basically, do we, in other words, I understand the first step of plain error analysis is was there error at all? And I understand you're saying there's no error at all. But is there any additional benefit to you from the second layer of deference, which is that any error has to be plain in the sense of clear or obvious? Is there anything, any way in which the government, in your view, would benefit from that delta? Yes, Your Honor. For instance, to the extent the court had doubt, which we don't think the court should, that, for instance, subdivision one constitutes a crime of violence of the secondary menacing statute. Even if the court decided that, looking at it on first principles, that would not be a crime of violence, the government would still prevail because any error there would not be plain. It never held that before. Exactly. Plain error, the defendant would have to show binding precedent that would, from the Supreme Court or from this court. So on that prong alone, the government would also win. And then in addition, as the government pointed out in the papers, the defendant would have to show prejudice. And he can't do that here. He can't show that he wouldn't have pled guilty if we had, if the government had just put subdivision one into the information. That's clear because, as the PSR and the defendant's own admissions make clear, the evidence against him is overwhelming. He was facing a life sentence and a significant mandatory minimum sentence. He got huge benefits from this plea. He knew what he was admitting to. He knew he was admitting to the brandishing because that was in the plea agreement. And just to respond to another one of Appellant's points, both up here and in the briefs, Appellant has argued that, well, he would never have admitted to brandishing because then he would have gotten another two years mandatory minimum sentencing. As the court knows, that's not how it works. Defendants can plead guilty or admit to facts that make out the elements of crimes that they are not pleading guilty to, and they are not thereby convicted of those facts just because- Because he's not charged with a 924C brandishing. Exactly, Your Honor. The brandishing element comes in at a later stage of the convoluted analysis of the nested incorporated crime. Correct. And, for instance, here, the defendant, by default, by pleading to these two 924C counts, also admitted the facts of two violent crimes in aid of racketeering, the attempted murder and the assault with a dangerous weapon. He is not thereby convicted of those counts. Right. And the 924C aspect of the attempted murder charge, similarly, he says he fired the gun, which would enhance the 924C punishment if that were charged in the indictment, but it's not. That's your point. Correct, Your Honor. So that does not show that somehow if he'd known that Subdivision I was the predicate here, he wouldn't have pled guilty. And finally, the record here, the sentencing transcript, makes absolutely clear how eager the defendant was to plead guilty here. The government pointed it out. That's at A68. Defense counsel pointed it out. That's at A73 to 74. And Judge Engelmeyer pointed it out. That's at A83. They all noted how quickly, how eager he was to plead guilty and how much of a benefit he got in terms of the ultimate sentence that was imposed as a result. So on that prong of plain error as well, the defendant cannot show any prejudice here. I don't mean to suggest any criticism of the U.S. Attorney's Office here because I don't know at what precise point in the history of the Supreme Court's ever-evolving classifications of what crimes count as crimes of violence that this occurred. But I also – but I assume that I don't have to suggest that the office take serious stock in light of where we are about exactly how these things get charged and exactly what people allocute to because it's a minefield now in a way that it once was not. I assume that that's something that has been a focus of attention. But with the benefit of hindsight, of course, a lot of these problems could have been avoided with a little more precision in the charging instruments. And I recognize that historically that has not always been thought to be required when people are pleading guilty. But we've seen enough cases of people having second thoughts and coming to this court with not bad arguments under the question of violent crimes that it very much behooves prosecutors to pay more attention. But as I say, I assume that you are and I'm not suggesting that whenever this happened it was folly not to have been more precise then. It just seems an obligation to say we could have avoided this with the benefit of hindsight and maybe parties working out plea agreements need to be more careful in the future. But you probably know that. Understood. Thank you very much. Thank you. Why don't we hear from Attorney Drake. You've reserved three minutes for rebuttal. If there's anything you'd like to add. Thank you, Your Honors. I don't have very much except I did want to say something about the factual basis of the plea and the allocution and what exactly is the argument that we're making here. As anybody who has practiced criminal law knows, when you walk into your Rule 11 hearing, anything can happen. In fact, defendants are told at the Rule 11 hearing, despite the fact that you've signed your plea agreement and done all of these things, you can still change your mind. And so it can simultaneously be true that there is hypothetically a factual basis for the plea. But the task of the district court is to establish that through the colloquy with the defendant. Make sure that the defendant is admitting to all of the elements of the offense. And so, and this is what I think perhaps this question reduces down to, if in a crime of this nature, the plea colloquy requires the defendant to admit to the vicar predicates, if that's the antecedent if question, if that is the case, then that wasn't done here. Because, as I mentioned in my opening remarks, there is no admission by the defendant, despite what may exist in all of the papers that preceded it, that he displayed a weapon, which is clearly an element of subsection one of New York's second degree menacing statute. And if this court has no further questions, thank you for your time this morning. Thank you very much, and thank you to counsel on both sides. Very well argued, very helpful to the court. Very well done. Thank you. We will reserve decisions, so thank you both.